UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

LINDA PASSANTE,

                              Plaintiff,

                 v.

CAMBIUM LEARNING GROUP,

                              Defendant.

**MEMORANDUM & ORDER**
23-CV-4060 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Linda Passante commenced the above-captioned action against Defendant

Cambium Learning Group on June 1, 2023, alleging violations of the Americans with

Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), the Family Medical Leave Act, 29 U.S.C.

§ 2601 *et seq.* ("FMLA"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et

seq.* ("NYSHRL").  (Compl., Docket Entry No. 1.)  On November 16, 2023, Plaintiff filed a

Second Amended Complaint ("SAC"), asserting claims of disability discrimination and

retaliation under the ADA, FMLA, and NYSHRL, and claims of age discrimination under the

Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") and the NYSHRL.

(Second Am. Compl., Docket Entry No. 17.)  On January 16, 2024, Defendant moved to dismiss

the SAC for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, and Plaintiff opposed the motion.[1]

---

[1]   (Def.'s Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 23; Def.'s Mem. in Supp. of
Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 23-1; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"),
Docket Entry No. 25; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No.
24.)

For the reasons set forth below, the Court grants in part and denies in part Defendant's motion to dismiss.

## I.    Background

Plaintiff is a resident of Suffolk County, New York.[2]  (SAC ¶¶ 8–9.)  Defendant is a corporation registered in Texas with its principal place of business located in Dallas, Texas.  (*Id.* ¶ 14.)

### i.    Plaintiff's employment with Defendant

In April of 2020, Plaintiff began working for Defendant as the Director of Strategic Communications and Marketing Services for its Lexia Learning division.  (SAC ¶ 19.)  Plaintiff was responsible for brand communications, public relations, social media, content development, and project management for all marketing functions.  (*Id.* ¶ 24.)  As part of her duties, Plaintiff negotiated contracts with and supervised external third party agencies, "introduced . . . a communications strategy and marketing content that aligned with business goals, built an internal marketing communications team of Strategy, Public Relations, Content, Creative[,] and Project Management Professionals, and mentored existing staff."  (*Id.* ¶¶ 26–27.)  Plaintiff was also required to participate in "approximately [thirty-eight] meetings per week" and received "approximately 1,000 emails per week" as part of her work for Defendant.  (*Id.* ¶¶ 30–31.)

### ii.    Plaintiff's leave of absence

In February of 2022, Plaintiff "passed out after a remote meeting."  (SAC ¶ 32.) Following this incident, Plaintiff contacted her designated Human Resources ("HR") representative, Christine Campanelli, who "urged [her] to take a leave of absence."  (*Id.* ¶¶ 33– 34.)  On February 10, 2022, Plaintiff requested a leave of absence under the FMLA "to treat

---

[2]  The Court assumes the truth of the factual allegations in the SAC for the purpose of deciding Defendant's motion.

persistent migraine headaches, dizziness, and some cognitive impairment that stemmed from a traumatic brain injury she suffered in 2019 when she was hit by a car." (*Id.* ¶ 35.)

Plaintiff alleges that her "traumatic brain injury has resulted in persistent migraine headaches, dizziness, and cognitive impairment" that have "substantially limited her ability to concentrate," "focus on tasks," and "interact with others," and that these limitations have "impeded her work performance" and "isolated her from social interactions and normal daily routines." (*Id.* ¶¶ 36–40.) Plaintiff's migraines occur "several times a week and last for several hours at a time, effectively rendering her incapacitated and unable to fulfill her job responsibilities during these episodes." (*Id.* ¶ 41.) Defendant approved Plaintiff's request for leave, and her leave of absence began on February 11, 2022. (*Id.* ¶ 50.)

### iii. Termination of Plaintiff's employment

During the week of May 9, 2022, Plaintiff "made repeated attempts to speak with" Campanelli and her immediate supervisor, George Scotti, "about extending her return for a few weeks and discussing any possible reasonable accommodations" they could make "to facilitate her return." (SAC ¶ 55.) Campanelli responded by telling Plaintiff that "maybe this was not the job for [Plaintiff]." (*Id.* ¶ 57.) Plaintiff alleges that, had she been able to discuss potential accommodations, she would have requested that Defendant (1) appoint her to "oversee a group of [d]irector-level individuals," and (2) "remove some of her non-essential responsibilities" to allow "her to focus on the tasks originally described to her when she was hired." (*Id.* ¶¶ 59–60.) Defendant's HR personnel subsequently "became hostile toward" Plaintiff and "began to send threatening emails stating that if [she] did not return to work as of May 13, 2022, she would be summarily terminated." (*Id.* ¶¶ 62–63.) On May 13, 2022, Defendant notified Plaintiff that her employment was being terminated effective immediately. (*Id.* ¶ 64.) Plaintiff alleges that, after her termination, Defendant added "multiple [d]irector-level positions to handle the

responsibilities that [Plaintiff] was handling alone," and hired "multiple younger individuals" to fill these roles.  (*Id.* ¶¶ 91, 101.)

## II.  Discussion

### a.  Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor."  *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678; *Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)).

### b.   Disability discrimination claims under the ADA and NYSRHL

Plaintiff brings claims for disability discrimination under the ADA and NYSHRL, alleging that Defendant discriminated against her on the basis of her disability by, among other things, failing to engage in the interactive process with her and by terminating her because of her alleged disability.  (*See* SAC ¶¶ 104–112; 121–127.)

### i.   ADA claim

Defendant argues that the Court should dismiss Plaintiff's claim of disability discrimination under the ADA because (1) Plaintiff does not plausibly allege that she is disabled within the meaning of the ADA; (2) Plaintiff has not established that she was qualified to perform the essential functions of her job; and (3) Plaintiff has not demonstrated a causal connection between her alleged disability and her termination.  (Def.'s Mem. 6–14, Def.'s Reply 1–5.)

Plaintiff argues that she sufficiently alleges in the SAC that she is disabled within the meaning of the ADA, was qualified for her position, and that Defendant terminated her because of her disability.  (Pl.'s Opp'n 6–14.)

To establish a prima facie case of discrimination under the ADA, a plaintiff must show by a preponderance of the evidence that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)); *see also Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-1220, 2024 WL 3264125, at *1 (2d Cir. July 2, 2024) (same); *Gorbea v. Verizon N.Y. Inc.*, No. 20-3486, 2021 WL 4851389, at *2 (2d

5

Cir. Oct. 19, 2021) (quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (per curiam))
(listing the four requirements for a prima facie ADA case); *Jones v. N.Y.C. Transit Auth.*, 838 F.
App'x 642, 643 (2d Cir. 2021) (same); *see also Adams v. Festival Fun Parks, LLC*, 560 F. App'x
47, 48–49 (2d Cir. 2014) (quoting *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir.
2013)) (outlining requirements for prima facie case under the ADA).

The parties do not dispute that Defendant is subject to the ADA, but dispute whether
Plaintiff suffers from a disability, was qualified to perform her job, and suffered an adverse
employment action because of her disability.

Defendant argues that Plaintiff fails to plausibly allege that she suffers from a disability.
In support, Defendant argues first, that "there is adverse case law on whether migraines qualify
as a disability," and Plaintiff has failed to demonstrate that her condition qualifies because she
does not "sufficiently allege the frequency, duration, severity, and long-term or permanent
impact of her alleged disability at the time of her employment." (Def.'s Mem. 8 (citations
omitted); *see also* Def.'s Reply 1–2.) Second, Defendant contends that Plaintiff fails to explain
"in sufficient detail how [Plaintiff's] . . . migraines and dizziness substantially limit her ability to
concentrate, focus on tasks, or interact with others." (Def.'s Mem. 9; Def.'s Reply 3.)

Plaintiff argues that she plausibly alleges that she is disabled because she "meticulously
details how [her] condition substantially limits her ability to concentrate, focus on tasks, and
interact with others." (Pl.'s Opp'n 7.) In support, Plaintiff contends that she "specifies that the
frequency and intensity of the migraines, combined with the disorienting and frequent dizziness,
have led to a substantial decline in her performance level compared to her pre-injury state," and
this "decline is directly attributable to the impairment of core competencies essential to her job
— her ability to concentrate and interact with others." (*Id.* at 7–8.)

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1); *see also Daly*, 2024 WL 3264125, at *1 (same).  Major life activities include standing, lifting, bending, speaking, working, concentrating, and interacting with others.  42 U.S.C. § 12102(2)(A); *see also Ibela v. Allied Universal*, No. 21-1995, 2022 WL 1418886, at *1 (2d Cir. May 5, 2022) (noting that "[m]ajor life activities include 'caring for oneself, performing manual tasks, seeing, hearing, eating . . . and working" (quoting 42 U.S.C. § 12102(2))); *Kopchik v. Town of East Fishkill*, 759 F. App'x 31, 37 (2d Cir. 2018) ("Major life activities include, *inter alia*, 'learning . . . concentrating, [and] thinking." (alterations in original) (quoting 42 U.S.C. § 12102(2))); *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 202–03 (2d Cir. 2004) (accepting "the Ninth Circuit's premise that 'interacting with others' is a 'major life activity' under the ADA" but establishing a new standard for determining whether "a limitation on this activity is 'substantial' for ADA purposes").  Under the EEOC's regulations, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA and 'is not meant to be a demanding standard.'"  *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 n.3 (2d Cir. 2014) (alteration in original) (quoting 29 C.F.R. § 1630.2(j)(1)(i)); *see also Hamilton v. Westchester County*, 3 F.4th 86, 93 (2d Cir. 2021) (same).  As a result, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Parada*, 753 F.3d at 68 n.3 (alteration in original) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)); *see Woolf*, 949 F.3d at 94 (noting that "the definition of 'disability' is not an exacting one").

"To determine whether a major life activity is substantially limited by an impairment, [courts] consider, among other factors, 'the nature and severity of the impairment; its duration or

expected duration; and the existence of any actual or expected permanent or long term impact.'"
*Ibela*, 2022 WL 1418886, at *1 (quoting *Capobianco*, 422 F.3d at 57).  Where the major life
activity at issue is working, there is a "well-established understanding that" an employee's
"inability to perform a single, particular job does not constitute a substantial limitation."  *Woolf*,
949 F.3d at 94 (citation omitted).  "This . . . principle of law recognizes that employees who are
precluded only from doing their specific job, or from working under a specific supervisor, do not
have a 'disability.'"[3]  *Id.*  Thus, "[t]o be substantially limited in the major life activity of working
. . . one must be precluded from more than one type of job, a specialized job, or a particular job
of choice."  *Freeman v. Kirisits*, 818 F. App'x 34, 40 (2d Cir. 2020) (quoting *Sutton v. United
Air Lines, Inc.*, 527 U.S. 471, 492 (1999)).  A plaintiff "must show that the limitation affects
the[ir] ability to 'perform a *class . . . or broad range of jobs.*'"  *Woolf*, 949 F.3d at 95 (quoting 29
C.F.R. § 1630 app.); *see also Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 835 (10th Cir. 2011)
(affirming the district court's grant of summary judgment on ADA claims based on migraines
because, *inter alia*, the plaintiff failed to "demonstrate that she was substantially limited in
performing a class of jobs or broad range of jobs in various classes as compared to most people
with comparable training, skills, and abilities").

 Plaintiff has not sufficiently alleged that she suffers from a disability within the meaning
of the ADA.  Plaintiff alleges that she experienced migraines "with a regularity that disrupts her
daily routine several times a week and last for several hours at a time, effectively rendering her
incapacitated and unable to fulfill her job responsibilities."  (SAC ¶ 41.)  Although these
allegations provide some detail as to the frequency and severity of Plaintiff's condition, they

---

[3]  In *Woolf*, the plaintiff suffered from migraines that "were related to the stress caused by
working under his direct supervisors" and thus he was "unable to perform only a single, specific
job."  949 F.3d at 93–94.

only address Plaintiff's ability to "fulfill *her* job responsibilities," (*id.* (emphasis added)), rather than her ability to "perform a class . . . or broad range of jobs," *Woolf*, 949 F.3d at 94 (emphasis omitted); *see also Lewis v. Kaleida Health*, No. 20-CV-1860, 2022 WL 4485288, at *3 n.5 (W.D.N.Y. Sept. 27, 2022) (noting that, although the complaint alleged that the plaintiff's conditions "might affect her ability to perform *her* job, . . . [it did] not address her ability to perform a class or broad range of jobs" (alterations and internal quotation marks omitted)). Moreover, while Plaintiff alleges that her migraines and related symptoms stem from a car accident that occurred in 2019, (SAC ¶ 35), she does not allege that it was this condition that caused her to "pass[] out after a remote meeting" in February of 2022, (*id.* ¶ 32), nor does she provide any non-conclusory factual allegations describing how her condition affected her at the time of her employment, *see Rodriguez v. N.Y.C. Dep't of Educ.*, No. 21-CV-3561, 2022 WL 4484576, at *5 (S.D.N.Y. Sept. 26, 2022) (granting motion to dismiss disability discrimination claim because the plaintiff failed to, *inter alia*, "describe in any 'detail . . . how [her disability] affected [her] at the time of [her] employment.'" (citing *Earl v. Good Samaritan Hosp. of Suffern N.Y.*, 625 F. Supp. 3d 292, 305 (S.D.N.Y. 2022))); *see also Rogers v. Niagara County*, No. 22-CV-792, 2023 WL 10949028, at *5 (W.D.N.Y. Sept. 13, 2023) ("[W]here a plaintiff fails to 'detail the frequency, duration, or severity of [her] alleged [disability], and how [it] affected [her] at the time of [her] employment,' her claim for disability discrimination must fail." (first alteration added) (quoting *Rodriguez*, 2022 WL 4484576, at *5)).

Plaintiff also alleges generally that her symptoms affect her ability to concentrate and interact with others. (*See* SAC ¶¶ 35–39 (alleging that Plaintiff's symptoms have "substantially limited" her "ability to concentrate," her "ability to focus on tasks," and "her ability to interact with others"). However, she does not specify how these major life activities are impacted by her condition. As other courts have noted, a plaintiff must do more than "[m]erely alleg[e] that a

major life activity is affected" in order to demonstrate that she is disabled under the ADA. *Perez v. N.Y. Presbyterian/Weill Cornell Med. Ctr.*, No. 23-CV-6152, 2024 WL 1514216 at *5 (S.D.N.Y. Apr. 8, 2024) (citations and alterations omitted); *see also Lewis*, 2022 WL 4485288, at *3 n.5 ("A complaint needs to do more than formulaically recite the major life activity limited by her impairment; it needs to give some detail about how the alleged disability substantially and actually affected any major life activity." (internal quotation marks and citation omitted)).[4] Accordingly, the Court grants Defendant's motion and dismisses Plaintiff's ADA claim.

### ii.  NYSHRL

Defendant concedes that "the NYSHRL has a broader definition of disability than does the ADA," but argues that Plaintiff's disability discrimination claims under the NYSHRL nevertheless fail because she "fails to sufficiently allege that [she] was otherwise qualified" or that Defendant terminated her employment because of her disability.  (Def.'s Mem. 16.)

Plaintiff argues that the Court should not dismiss her NYSHRL disability discrimination claim for the same reasons it should not dismiss her ADA disability discrimination claim.  (Pl.'s Opp'n 15.)  Plaintiff contends that the NYSHRL "defines disability more broadly than the ADA" and therefore the "facts supporting [her] ADA claim inherently support [her] NYSHRL claim." (*Id.*)

 Historically, "claim[s] of disability discrimination under the [NYSHRL] . . . [were] governed by the same legal standards as govern federal ADA claims." *Tafolla v. Heilig*, 80 F.4th 111, 119 (2d Cir. 2023) (second alteration in original) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006)); *Lehey v. Northwell Health, Inc.*, No. 23-CV-4708, 2024 WL

---

[4]  Because the Court concludes that Plaintiff has not sufficiently alleged that she is disabled within the meaning of the ADA, it declines to address whether Plaintiff has demonstrated that she is qualified for her position or whether there is a causal connection between her alleged disability and an adverse employment action.

1703697, at *3 (S.D.N.Y. Apr. 14, 2024) (same).  However, in June of 2019, New York State amended the NYSHRL, "the effect of which is to render the standard for claims [brought under the NYSHRL] closer to the standard under the [New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL")]."[5]  *Wellner v. Montefiore Med. Ctr.*, No. 17-CV-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019); *Lehey*, 2024 WL 1703697, at *3 (explaining that in "2019, the New York state legislature amended the NYSHRL" and "[t]he effect of the amendment is to make the standard for NYSHRL claims closer to the more liberal standards of the [NYCHRL]"); *DeAngelo v. MAXIMUS/NY Medicaid Choice*, No. 19-CV-7957, 2022 WL 3043665, at *12 n.15 (S.D.N.Y. Aug. 2, 2022) (discussing the more liberal post-amendment standard under the NYSHRL); *see also* S.B. 6954, 2019 Leg., (N.Y. 2019).  "[C]ourts must construe the NYCHRL 'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'"  *Harris v. N.Y.C. Hum. Res. Admin.*, No. 20-CV-2011, 2022 WL 3100663, at *8 (S.D.N.Y. Aug. 4, 2022) (quoting *Leroy v. Delta Airlines, Inc.*, 36 F.4th 469, 474 (2d Cir. 2022)); *see also Vora v. N.Y.C. Dep't of Educ.*, No. 22-CV-10891, 2024 WL 1421131, at *17 (S.D.N.Y. Jan. 24, 2024) (explaining that "the New York State Legislature amended the NYSHRL to require that courts construe that statute 'liberally for the accomplishment of [its] remedial purposes . . . regardless of whether federal civil rights laws, including those laws with provisions worded comparably . . . have been so construed'" (quoting *Cooper v. Franklin Templeton Invs.*, No. 22-2763, 2023 WL 3882977, at *17 (2d Cir. June 8, 2023))).

---

[5]  The amendments apply to claims accruing after October 11, 2019, *see Wellner v. Montefiore Med. Ctr.*, No. 17-CV-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019), and therefore apply to Plaintiff's claims, which accrued on or after October 11, 2019, (*see generally* SAC); *see also Lehey v. Northwell Health, Inc.*, No. 23-CV-4708, 2024 WL 1703697, at *3 (S.D.N.Y. Apr. 19, 2024) (applying the "amended, more liberal standard of the NYSHRL" because the plaintiffs NYSHRL claim "rest[ed] on conduct post-dating the amendment's effective date").

Under the NYSHRL, a plaintiff must nevertheless show that "she . . . was qualified to hold the position." *Acala v. Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.*, 201 N.Y.S.3d 202, 203–04 (App. Div. 2023); *Minor v. Essence Ventures, LLC*, 212 N.Y.S.3d 552, 2024 WL 3212243, at *2 (Sup. Ct. 2024) (unpublished table decision) (explaining that a plaintiff must show, among other things, that "she was qualified to hold the position where she suffered the adverse employment action"). In addition, "plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *see also Gorbea*, 2021 WL 4851389, at *3 (same); *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) (acknowledging standard for NYCHRL discrimination claims). Even under this more forgiving pleading standard, a plaintiff must still plausibly allege that she was treated less well "at least in part '*because of* [her] [belonging to a protected class].'" *Mihalik*, 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39, 40 n.27 (App. Div. 2009)); *see also Harris*, 2022 WL 3100663, at *8 ("To count as being treated 'less well,' a plaintiff must merely plausibly allege 'differential treatment that is more than trivial, insubstantial, or petty.'" (quoting *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020))).

Plaintiff alleges that she was "a member of a protected class" under the NYSHRL "due to her disability," that she was "qualified for employment with Defendant," and that "Defendant unlawfully discriminated against [her] on the basis of her disability . . . by failing to provide reasonable accommodations, changing the organizational structure of her team during her FMLA leave, and terminating her employment due to her disability." (SAC ¶¶ 123–127.) Defendant does not appear to challenge whether Plaintiff was "disabled" within the meaning of the

NYSHRL[6] or suffered an adverse employment action when Defendant terminated her employment.  The Court therefore considers only whether Plaintiff was qualified for her position and whether there is a causal connection between her alleged disability and her termination.

### 1.  Plaintiff was qualified for her position

Plaintiff sufficiently alleges that she was qualified for her position.  She alleges that she worked for Defendants from 2020 to 2022 and that she "always performed her duties in an exemplary manner."  (SAC ¶ 25.)  In addition, Plaintiff "acquired a BA in Business Communications, Leadership Certification from Harvard, [and a] Financial Certification from NYU."  (*Id.* ¶ 23.)  These allegations are sufficient to demonstrate that Plaintiff was "qualified" under the NYSHRL.  *See, e.g.*, *Minor*, 2024 WL 3212243, at *5 (noting that the plaintiff demonstrated that she was qualified because she "claimed that she worked for [d]efendants for approximately two years and did not receive any verbal or written warnings about her performance"); *cf. Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 325 (2004) (Smith, J., concurring) (noting that there was "no dispute that [the plaintiff] was qualified for the position as evidenced by her credentials and tenure on the job," and that she was "a professional music therapist with graduate degrees in music therapy and urban education").  Moreover, there are no allegations that Defendant provided any warnings to Plaintiff regarding her work performance. *See Tosha Rest., LLC v. N.Y. State Div. of Human Rights*, 911 N.Y.S.2d 734, 738 (App. Div.

---

[6]  The Second Circuit has "indicated that the definition of a disability under the NYSHRL and NYCHRL is broader than the ADA definition."  *Jones v. N.Y.C. Transit Auth.*, 838 F. App'x 642, 644 n.1 (2d Cir. 2021) (citing *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 233 (2d Cir. 2000)); *see also Espinoza v. CGJC Holdings LLC*, No. 23-CV-9133, 2024 WL 3520662, at *5 n.6 (S.D.N.Y. July 23, 2024) ("The NYCHRL and NYSHRL define 'disability' more broadly than does the ADA.").  Under the NYSHRL, a "disability" is a physical impairment "which prevents the exercise of normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques."  N.Y. Exec. L. § 292(21); *see also Espinoza*, 2024 WL 3520662, at *5 (same).

2010) (finding that the plaintiff "presented a prima facie case of discrimination in that he was terminated from a position that he was otherwise qualified to perform on the basis of a disability" where the record demonstrated, *inter alia*, that "he had never been disciplined for any conduct nor had he received any complaints regarding either his medical condition or his job performance").

### 2.   Plaintiff has demonstrated causation

Plaintiff has also sufficiently alleged a discriminatory motive for her termination.  She alleges in the SAC that, "during the week of May 9," she made "repeated attempts" to speak with Defendant regarding "any possible accommodations they might be able to make," but Plaintiff "only received a response from . . . Campanelli . . . that 'maybe this was not the job for [her].'" (*Id.* ¶¶ 55, 57.)  "[A]n employer's failure to engage in a good faith interactive process can be introduced as evidence tending to show disability discrimination."  *Sheng v. M&T Bank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017) (footnote omitted); *Enechi v. City of New York*, No. 20-CV-8911, 2023 WL 6293941, at *6 (S.D.N.Y. Sept. 27, 2023) ("[F]ailure to engage in an interactive process supports an inference of disability discrimination.").  Although Defendant asserts that it attempted to engage in the interactive process[7] with Plaintiff by assigning her an HR representative, (Def.'s Mem. 14), Plaintiff alleges that Defendant did not respond to her requests for accommodations other than to notify her of her termination, (*see* SAC ¶¶ 57, 63 ("[I]nstead of responding to [Plaintiff's] requests to discuss reasonable accommodations, HR began to send threatening emails stating that if [she] did not return to work as of May 13, 2022, she would be summarily terminated.")).  Defendant's failure to meaningfully engage in the interactive process

---

[7] An "interactive process" includes "meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered [the] employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome."  *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 218–19 (2d Cir. 2001) (citation omitted) (alterations in original).

14

with Plaintiff supports an inference of discrimination under the NYSHRL.  *See Romanello v. Intesa v. Sanpaolo S.p.A.*, 20 N.Y.S.3d 294, 2015 WL 4585120, at *12 (Sup. Ct. 2015) (unpublished table decision) ("The fact that [the plaintiff] was terminated without the opportunity to engage in any interactive process gives rise to the inference of discrimination.").

Accordingly, Plaintiff has stated a claim for disability discrimination under the NYSHRL and the Court denies Defendant's motion to dismiss this claim.

### c.   Retaliation claims under the ADA and NYSHRL

Plaintiff brings claims for retaliation under the ADA and the NYSHRL, alleging that Defendant retaliated against her by terminating her employment in response to her requests for reasonable accommodations and her "complaints concerning disability discrimination."  (SAC ¶¶ 147–160.)

#### i.   ADA

Defendant argues that Plaintiff fails to state a claim of retaliation under the ADA because she does not allege that she engaged in a protected activity or that she was terminated because of such protected activity.  (Def.'s Mem. 21–22.)  In support, Defendant argues that Plaintiff only alleges that she "complained in writing" but does not specify the subject of her complaints or whether they were related to her alleged disability.  (*Id.*)  In addition, Defendant argues that, to the extent Plaintiff relies on "temporal proximity between her alleged complaints and her termination" to establish causation, she does not provide the relevant dates, thus making it impossible to determine temporal proximity.  (*Id.* at 22.)

Plaintiff argues that she sufficiently alleges that Defendant "terminated her due to her opposition to disability discrimination."  (Pl.'s Opp'n 22.)  In support, Plaintiff contends that her allegations "leaves no doubt that her grievances pertained to disability discrimination," and she

alleges temporal proximity by alleging that her complaints "spanned from February 11, 2022 to May 13, 2022." (*Id.* at 22–23.)

"To state an ADA retaliation claim, an employee 'must show that [s]he engaged in a protected activity, that [s]he suffered an adverse employment action, and that a causal connection exists between that protected activity and the adverse employment action.'" *Johnson v. Mount Sinai Hosp. Grp.*, No. 23-466, 2024 WL 3289475, at *2 (2d Cir. July 3, 2024) (alterations in original) (quoting *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72–73 (2d Cir. 2019)); *see also Ibela*, 2022 WL 1418886, at *2 (same); *Clark v. Coca-Cola Beverages Ne., Inc.*, No. 20-4040, 2022 WL 92060, at *5 (2d Cir. Jan. 10, 2022) (same); *Norman v. NYU Langone Health Sys.*, No. 20-3624, 2021 WL 5986999, at *4 (2d Cir. Dec. 17, 2021) (discussing factors of an ADA retaliation claim). "A plaintiff bears only a minimal burden in making this prima facie showing." *Perez v. City of New York*, 843 F. App'x 406, 407 (2d Cir. 2021) (first citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); and then citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

The parties do not dispute that Plaintiff's termination constitutes an adverse employment action. *See Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 167 (2d Cir. 2024) ("Here, there is no dispute that [the plaintiff] . . . suffered at least one adverse action — the termination of his employment"). Accordingly, the Court only considers whether Plaintiff engaged in a protected activity and whether there is a causal connection between the protected activity and her termination.

### 1.   Plaintiff engaged in protected activity

Plaintiff sufficiently alleges that she engaged in an activity protected by the ADA. "Activities protected by the ADA include complaints of ADA discrimination, including complaints . . . that the employer's actions violated the ADA, and requests for reasonable

16

accommodations." *Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017); *see Treglia*, 313 F.3d at 720 ("[A]ttempts to assert . . . rights against discrimination are protected activities . . . ."); *Frantti v. New York*, 850 F. App'x 17, 21 (2d Cir. 2021) (same); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 126–27 (2d Cir. 2013) (finding that plaintiff's "complaints to public safety and the school's Equality Officer" sufficed to establish that plaintiff engaged in a protected activity). "A complaint of discrimination constitutes 'protected activity' only if (1) the plaintiff holds a good-faith belief that he suffered discrimination because of a protected characteristic and (2) that belief is reasonable." *Jagmohan v. Long Island R.R. Co.*, 622 F. App'x 61, 63–64 (2d Cir. 2015) (citing *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)); *Sharikov*, 103 F.4th at 170 ("An employee can satisfy the protected activity requirement even if his condition was not a disability within the meaning of the ADA so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the ADA." (internal quotation marks and citation omitted)). "Requesting a reasonable accommodation of a disability is an ADA-protected activity." *Rodriguez v. Atria Senior Living Grp., Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012) (citing *Weixel v. Bd. of Educ.*, 287 F.3d 138, 149 (2d Cir. 2002)); *see Ibela*, 2022 WL 1418886, at *2 ("Seeking a reasonable accommodation constitutes protected activity under the ADA."); *Frantti*, 850 F. App'x at 21 (same); *Weixel*, 287 F.3d at 149 ("[P]laintiffs . . . allege that they were seeking reasonable accommodation [on the basis of] disability — which constitutes protected activity under [the ADA].").

Plaintiff alleges that, "[d]uring the week of May 9," she "made repeated attempts to speak with" HR personnel to "extend[] her return for a few weeks" and "discuss[] any possible reasonable accommodations they might be able to make to facilitate her return." (SAC ¶ 55.) These allegations constitute protected activities under the ADA. *See, e.g.*, *Ibela*, 2022 WL

1418886, at *2 ("Seeking a reasonable accommodation constitutes protected activity under the ADA."); *Felix v. N.Y.C. Dep't of Educ.*, No. 21-CV-6109, 2023 WL 4706097, at *10 (S.D.N.Y. July 24, 2023) ("Seeking reasonable accommodation for a disability constitutes a 'protected activity,' and retaliation in response to a plaintiff's request for reasonable accommodation may violate the ADA's prohibition on retaliation."); *see also Crawford v. Bronx Cmty. Coll.*, No. 22-CV-1062, 2023 WL 11862082, at *12 (S.D.N.Y. July 19, 2023) (stating that "a request for leave as an accommodation [can] constitute[] protected activity" (citing *Sobhi v. Sociedad Textil Lonia Corp.*, No. 13-CV-8073, 2014 WL 7474338, at *6 (S.D.N.Y. Dec. 30, 2014))).

### 2.   Plaintiff has established a causal connection

To state a claim of retaliation under the ADA, a plaintiff must show "that a causal connection existed between the protected activity and the adverse action." *Baum v. Rockland County*, 161 F. App'x 62, 64 (2d Cir. 2005) (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)); *see also Johnson*, 2024 WL 3289475, at *2 (same).  A causal connection in retaliation claims can be shown: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015)); *Tafolla*, 80 F.4th at 125 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)) (stating the same). The plaintiff must provide "sufficient evidence of a causal nexus between [her] protected activity and the alleged adverse employment actions [s]he suffered." *Clark*, 2022 WL 92060, at *5 (quoting *Fox*, 918 F.3d at 73).  "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time

18

by the adverse action." *Lovejoy-Wilson*, 263 F.3d at 224 (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *see Ibela*, 2022 WL 1418886, at *2 ("[A] plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." (quoting *Gorman-Bakos v. Cornell Co-Op Ext. of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001))); *id.* (finding that a gap of two months between a protected activity and adverse action was sufficient to plausibly allege causation); *Pistello v. Bd. of Educ.*, 808 F. App'x 19, 21–22 (2d Cir. 2020) (considering dates of protected activities in relation to adverse employment actions and permitting the plaintiff's ADA retaliation claim to proceed).

Plaintiff alleges that she made attempts to discuss delaying her return to work and potential reasonable accommodations "during the week of May 9," and that her employment was terminated on May 13, 2022.  (SAC ¶¶ 55, 64.)  Accepting Plaintiff's allegations as true and drawing all reasonable inferences in her favor, these allegations suggest that, at most, Defendant terminated Plaintiff within four days of her engaging in protected activity.  A period of four days between the protected activity and the adverse employment action is sufficient to support an inference of retaliatory motive at the pleading stage.  *See, e.g.*, *Tafolla*, 80 F.4th at 126 ("The close temporal proximity [of nine days] . . . is sufficient to support an inference of retaliation."); *Littlejohn*, 795 F.3d at 319–20 (finding causation at the motion to dismiss stage because the plaintiff's "allegations that the demotion occurred within days after her complaints of discrimination are sufficient to plausibly support an indirect inference of causation").

Accordingly, Plaintiff has stated a claim of retaliation under the ADA and the Court denies Defendant's motion to dismiss this claim.

### ii.   NYSHRL

Plaintiff has not sufficiently alleged that she engaged in a protected activity under the NYSHRL.[8]  As discussed above with respect to NYSHRL discrimination claims, the 2019 amendments to the NYSHRL make the standard for NYSHRL retaliation claims closer to the standard under the NYCHRL.  *See Meckeler v. Cornell Univ.*, No. 23-CV-773, 2024 WL 3535488, at *11 (N.D.N.Y. July 25, 2024) ("[F]or claims that accrue on or after the effective date of the NYSHRL October 11, 2019 amendments, the standard for such claims is 'closer to the standard under the NYCHRL.'" (quoting *Wellner*, 2019 WL 4081898, at *5 n.4)); *Thompson v. Shutterstock, Inc.*, No. 23-CV-4155, 2024 WL 2943813, at *25 (S.D.N.Y. June 10, 2024) ("[T]he legislature amended the NYSHRL in 2019, and thus any claims based upon acts of . . . retaliation that occurred after October 11, 2019 are analyzed under a different standard."). Under the post-amendment NYSHRL a plaintiff must show that: (1) she participated in a protected activity; (2) the defendant knew about her participation in a protected activity; (3) the employer engaged in conduct that was reasonably likely to deter a person from engaging in a protected activity; and (4) a causal connection existed between the protected activity and the defendant's conduct.  *See Palmer v. eCapital Corp.*, No. 23-CV-4080, 2024 WL 3794715, at *11 (S.D.N.Y. Aug. 13, 2024) ("[T]o establish a prima facie case of retaliation under the . . . [post-amendment NYSHRL], a plaintiff must show that: (1) [s]he participated in a protected activity; (2) the defendant knew about h[er] participation; (3) the defendant took an employment action that disadvantaged the plaintiff in any manner; and (4) a causal connection existed between the protected activity and the negative employment action." (first alteration added) (quoting

---

[8]  The parties do not separately address Plaintiff's claims of retaliation under the NYSHRL.  Instead, both parties appear to argue that Plaintiff's NYSHRL retaliation claim should be subject to the same analysis as her ADA retaliation claim.

*Fattoruso v. Hilton Grand Vacations Co.*, 525 F. App'x 26, 27 (2d Cir. 2013))); *see also Wright v. City of New York*, No. 23-CV-3149, 2024 WL 3952722, at *10 (S.D.N.Y. Aug. 27, 2024) (explaining that "[r]etaliation victims are provided with broader protection under the NYCHRL — and . . . under the post-amendment NYSHRL — than their federal counterpart" because under the state statutes a "plaintiff need not prove any 'adverse' employment action; instead, [she] must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity").

Under the NYSHRL, however, a request for a reasonable accommodation is not considered a protected activity.[9]  *See Marshall v. Westchester Med. Ctr. Health Network*, No. 22-CV-7990, 2024 WL 665200, at *14 (S.D.N.Y. Feb. 16, 2024) (explaining that "a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim" under the NYSHRL (quoting *Mejia v. City of New York*, No. 17-CV-2696, 2020 WL 2837008, at *13 (E.D.N.Y. May 30, 2020))); *Scarville v. Living Res. Corp.*, No. 21-CV-807, 2022 WL 4365863, at *11 (N.D.N.Y. Sept. 21, 2022) ("[T]he NYSHRL does not include requests for reasonable accommodation as 'protected activity.'" (citations omitted)); *see also Nofal v. IMCMV Times Square LLC*, No. 22-CV-3104, 2024 WL 1138928, at *10 (S.D.N.Y. Mar. 15, 2024) ("The standards used to evaluate retaliation claims under [the NYSHRL and NYCHRL] either parallel or are more generous to plaintiffs than those under the ADA." (citations omitted)).

---

[9]  Although the New York City Council has amended the NYCHRL to "make[] clear that requesting a reasonable accommodation is a protected activity," *Piligian v. Icahn Sch. of Med. at Mt. Sinai*, 490 F. Supp. 3d 707, 722 (S.D.N.Y. 2020), it does not appear that courts have read this amendment into the NYSHRL, which does not contain a similarly worded provision, *see, e.g.*, *Marshall v. Westchester Med. Ctr. Health Network*, No. 22-CV-7990, 2024 WL 665200, at *14 (S.D.N.Y. Feb. 16, 2024) (agreeing with the defendants that a request for reasonable accommodation "is not a protected activity for purposes of a retaliation claim under the NYSHRL" where retaliatory conduct was alleged to have occurred in 2021 (internal quotation marks omitted)).

Other than Plaintiff's request for reasonable accommodations during the week of May 9, Plaintiff does not allege any other conduct that constitutes protected activity under the NYSHRL. Although Plaintiff alleges that she "complained in writing" prior to and during her FMLA leave, (SAC ¶ 56), she does not allege any factual details regarding the subject of her complaints, *see Wilson v. Southampton Hosp.*, No. 14-CV-5884, 2015 WL 5124481, at *18 (E.D.N.Y. Aug. 28, 2015) (dismissing ADA and NYSHRL retaliation claims where the plaintiff, among other things, "fail[ed] to specify any supporting details concerning the alleged protected activity"). As a result, the Court cannot conclude that Plaintiff engaged in a protected activity under the NYSHRL.

Accordingly, Plaintiff has failed to state a claim of retaliation under the NYSHRL and the Court grants Defendant's motion to dismiss the claim.

### d.   Age discrimination claims under the ADEA and NYSHRL

Plaintiff brings claims of age discrimination under the ADEA and NYSHRL, alleging that Defendant discriminated against her on the basis of her age by terminating her employment and replacing her with "multiple younger individuals." (SAC ¶¶ 128–133.)

### i.   ADEA

Defendant argues that Plaintiff fails to state a claim for age discrimination because she does not allege that "age was the 'but-for' cause of the employer's adverse action." (Def.'s Mem. 19 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)).) In support, Defendant argues that the allegations that "Plaintiff 'represents a demographic that often faces unjust hurdles . . . ' and that [Defendant] hired several 'younger individuals in her previous role'" are insufficient to establish causation. (Def.'s Mem. 19–20 (quoting SAC ¶¶ 100–101).)

22

Plaintiff argues that she "is not required to plead that age discrimination was the 'but-for' cause of her termination" and that her allegations pertaining to age discrimination "suggest an environment where age may have played a pivotal role in employment decisions." (Pl.'s Opp'n 20–21 (citing *Chacko v. Worldwide Flight Servs., Inc.*, No. 08-CV-2363, 2010 WL 424025, at *3 (E.D.N.Y. Feb. 3, 2010)).) Plaintiff also asserts that "the fact that [she] was hired in her sixties and later replaced suggests a potential shift in the employer's approach to age." (*Id.* at 21.)

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see also Lively v. WAFRA Inv. Advisory Grp.*, 6 F.4th 293, 302 (2d Cir. 2021) (quoting same). To establish a prima facie case of age discrimination, a plaintiff must show that: (1) she was within the protected age group (more than 40 years old); (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010); *see also Bockus v. Maple Pro, Inc.*, 850 F. App'x 48, 51 (2d Cir. 2021) (same); *Gentile v. Touro Law Ctr.*, No. 21-CV-1345, 2024 WL 1199512, at *3 (E.D.N.Y. Mar. 20, 2024) (same).

At the pleading stage, a plaintiff does not need to prove discrimination or even allege facts establishing every element of the *prima facie* case required under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), but the facts alleged must give "plausible support to the reduced requirements" of the prima facie case. *Littlejohn*, 795 F.3d at 311; *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 767 (2d Cir. 2015); *Vega*, 801 F.3d at 84; *Gentile*, 2024 WL 1199512, at *3 ("Although the plaintiff need not make out a *prima facie* case at the motion to dismiss stage, the *prima facie* elements nonetheless provide a 'guide-post for the adjudication of

a motion to dismiss.'" (quoting *Pustilnik v. Battery Park City Auth.*, No. 18-CV-9446, 2019 WL 6498711, at *4 (S.D.N.Y. Dec. 3, 2019))). Thus, a plaintiff need only plead facts sufficient to give "plausible support" to the plaintiff's "minimal" initial burden, which is governed by the statute under which he brings his claims. *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 306, 311); *see also Gentile*, 2024 WL 1199512, at *4 ("At the pleadings stage, an ADEA plaintiff may establish but-for causation either 'by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" (quoting *Vega*, 801 F.3d at 87)).

To state a claim pursuant to the ADEA, a plaintiff must allege that age was the "but for" cause of the employer's adverse action, and not merely that it was a motivating factor. *See Vega*, 801 F.3d at 86 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)); *see also Lively*, 6 F.4th at 302–03 ("[I]t is not sufficient for a plaintiff to show 'that age was simply a motivating factor' in the employer's adverse action." (quoting *Gross*, 557 U.S. at 174)); *Bockus*, 850 F. App'x at 51 ("[A] plaintiff alleging age discrimination under the ADEA must allege that age was the but-for cause of the employer's adverse action." (internal quotation marks and alterations omitted) (quoting *Vega*, 801 F.3d at 86)); *Gentile*, 2024 WL 1199512, at *4 (same); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) ("The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employer[']s *only* consideration, but rather that the adverse employment action[] *would not have occurred without it*." (second alteration in original) (citation omitted)); *Bohnet v Valley Stream Union Free Sch. Dist. 13*, 30 F. Supp. 3d 174, 180 (E.D.N.Y. 2014) ("What is required at the motion to dismiss stage is that the complaint contain sufficient facts to make plausible the conclusion that 'but for' her age plaintiff would have been hired."), *aff'd*, 594 F. App'x 53 (2d Cir. 2015). "Without more, the mere fact that an older employee was replaced by

24

a younger one does not plausibly indicate discriminatory motive." *Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 33 (2d Cir. 2016).

Plaintiff has failed to state a claim for discrimination under the ADEA because she does not plausibly allege that her age was the but-for cause of an adverse employment action. Plaintiff alleges that she is over sixty-five years of age and that Defendant's "decision to forgo discussions of continued employment or reasonable accommodations with Plaintiff,[10] coupled with their subsequent hiring of multiple younger individuals to fill her previous role, indicates age discrimination." (SAC ¶¶ 100–101.) Plaintiff does not provide any additional information regarding these individuals, such as their ages or qualifications. Thus, even accepting Plaintiff's allegations as true and drawing all reasonable inferences in her favor, these allegations do not establish that her age was the but-for cause of her termination. The allegation that a plaintiff was replaced by younger employees, "[w]ithout more, . . . does not plausibly indicate discriminatory motive." *Marcus*, 661 F. App'x at 33; *see also Grimes v. N.Y. & Presbyterian Hosp.*, No. 23-CV-652, 2024 WL 816208, at *8 (S.D.N.Y. Feb. 26, 2024) (same); *Doolittle v. Bloomberg L.P.*, No. 22-CV-9136, 2023 WL 7151718, at *6 (S.D.N.Y. Oct. 31, 2023) ("[A]n allegation that a plaintiff was replaced by a younger employee is not sufficient, without more, to survive a motion to dismiss." (alteration and citation omitted)); *Cocca-Rau v. Standard Ins. Co.*, No. 19-CV-6149,

---

[10] Plaintiff references her request for accommodations in connection with her ADA claim, but does not provide any authority supporting her position that an employer's failure to provide reasonable accommodations is evidence of age discrimination. *Cf. Bernheim v. N.Y.C. Dep't of Educ.*, No. 19-CV-9723, 2021 WL 2619706, at *3 (S.D.N.Y. June 25, 2021) ("Because neither requesting an accommodation for a disability nor requesting FMLA leave involves [the plaintiff's] age, the allegations [in the complaint] do not demonstrate that [the plaintiff] was engaged in any protected activity under the ADEA.").

2020 WL 4207442, at *8 (S.D.N.Y. July 22, 2020) (dismissing ADEA claim where plaintiff alleged only that she "was replaced by much younger worker or workers").[11]

Accordingly, Plaintiff has failed to state a claim of age discrimination under the ADEA and the Court grants Defendant's motion and dismisses the claim.

### ii.   NYSHRL

Although the parties agree that Plaintiff's NYSHRL age discrimination claim is governed by the same standards as her ADEA claim, (*see* Def.'s Mem. 19; Pl.'s Opp'n 19), it is unclear whether, in light of the 2019 amendments to the NYSHRL, the same standard continues to apply to both sets of claims.

As discussed above, the 2019 amendments to the NYSHRL require courts to construe its provisions "liberally for the accomplishment of the [statute's] remedial purposes."  N.Y. Exec. L. § 300; *see also Shaughnessy v. Scotiabank*, No. 22-CV-10870, 2024 WL 1350083, at *10 (S.D.N.Y. Mar. 29, 2024) ("[T]he 2019 amendments to the NYSHRL relaxed a plaintiff's burden, instructing courts to construe provisions liberally to accomplish the remedial purposes of the NYSHRL.").  Following the 2019 amendments, "it remains unclear" whether the NYSHRL standard is "co-extensive" with the NYCHRL's more liberal standards, or "whether a plaintiff's burden under the NYSHRL resides somewhere between his burdens under the ADEA and the

---

[11]   Because the Court concludes that Plaintiff's ADEA claim fails on the merits, it does not address Defendant's alternative argument that Plaintiff's claim is barred because she did not exhaust available administrative remedies.  *See Noble v. Career Educ. Corp.*, No. 07-CV-5832, 2009 WL 2391864, at *5 n.6 (S.D.N.Y. Aug. 4, 2009) (declining to consider the parties' arguments as to whether the plaintiff's Title VII claims were barred by the plaintiff's failure to exhaust administrative remedies "[b]ecause Title VII's administrative exhaustion requirement is not jurisdictional"), *aff'd*, 375 F. App'x 102 (2d Cir. 2010); *see also Moore v. DeJoy*, No. 18-CV-9967, 2021 WL 4523503, at *4 (S.D.N.Y. Sept. 30, 2021) ("In the Second Circuit, exhaustion of administrative remedies under . . . the ADEA is not a jurisdictional prerequisite to suit." (citations omitted)); *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 352 (E.D.N.Y. 2013) (noting that, in the Title VII and ADEA contexts, "[e]xhaustion of remedies is a precondition to suit, rather than a jurisdictional requirement").

NYCHRL." *Shaughnessy*, 2024 WL 1350083, at *10.  However, at least one court has concluded post amendment that the "suggestion that a significantly younger female employee" replaced the plaintiff was insufficient to support an inference of discriminatory motivation. *Doolittle*, 2023 WL 7151718, at *7 (internal quotation marks and citations omitted).  In addition, under the NYCHRL's more lenient standard, courts have found that similar allegations are insufficient to survive a motion to dismiss.  *See, e.g.*, *Murillo-Roman v. Pension Bds. – United Church of Christ*, No. 22-CV-8365, 2024 WL 246018, at *12 (S.D.N.Y. Jan. 23, 2024) (concluding that, where the plaintiff's age discrimination claims "note only that the [defendant] hired two younger employees to perform some of her assigned tasks," the complaint "lack[ed] a plausible inference that age motivated any of [p]laintiff's alleged mistreatment," "[e]ven under the more lenient standards of the NYCHRL"); *Williams v. Victoria's Secret*, No. 15-CV-4715, 2017 WL 1162908, at *8–9 (S.D.N.Y. Mar. 28, 2017) (concluding that the allegation that the plaintiff was "eventually replaced by someone under the age of [forty]" was insufficient to raise an inference of a discriminatory motive under the NYCHRL).

Plaintiff has failed to state a claim of age discrimination under the NYSHRL even applying the NYCHRL standard.  Plaintiff alleges only that she was replaced by multiple younger employees.  (*See* SAC ¶ 101.)  This allegation is insufficient to raise an inference of discriminatory motive even under the NYCHRL standard.  *See Doolittle*, 2023 WL 7151718, at *7 (concluding that the plaintiff had "not adequately alleged a *prima facie* case of age discrimination even under the more lenient standards of the NYSHRL and NYCHRL" in part because the allegation that "a significantly younger female employee would replace [her] . . . role" did not support an inference that age was a motivating factor behind the adverse employment action (internal quotation marks and citations omitted)); *see also Murillo-Roman*, 2024 WL 246018, at *12 (concluding that, "[e]ven under the more lenient standards of the

NYCHRL," the plaintiff's allegation that her employer "hired two younger employees to perform some of her assigned tasks" and "called her 'obsolete'" lacked "a plausible inference that age motivated any of [the plaintiff's] alleged mistreatment" (citations omitted)); *cf. White v. Bridge Inc.*, No. 18-CV-1689, 2019 WL 4805896, at \*5 (S.D.N.Y. Sept. 30, 2019) ("Without any allegations about [the less-experienced replacements'] ages, the fact that they were treated more favorably than [the plaintiff] offers no support to [her] assertion of discriminatory motivation."). The Court therefore grants Defendant's motion to dismiss this claim.

### e.   FMLA claims

Plaintiff brings interference and retaliation claims under the FMLA, alleging that Defendant failed to reinstate Plaintiff to her prior position and terminated her in response to her exercise of rights under the FMLA.[12]   Plaintiff seeks compensatory, punitive, and emotional damages for Defendant's alleged FMLA violations.  (SAC ¶¶ 113–120, 139–146, 163, 165.)

---

[12]   Plaintiff characterizes one of her claims under the FMLA as a claim for "[d]isability [d]iscrimination," (*see* SAC ¶¶ 113–120), but the parties do not address whether the FMLA provides a distinct cause of action for discrimination, or explain what standards would apply to such a claim.  Courts within the Second Circuit have recognized two types of claims cognizable under the FMLA: interference and retaliation.  *See Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017) ("FMLA claims come in at least two varieties: interference and retaliation."); *Arnold v. Rsch. Found. for State Univ. of N.Y.*, 216 F. Supp.3d 275, 285 (E.D.N.Y. 2016) ("The Second Circuit recognizes two types of claims under the FMLA — and only two types of claims — interference and retaliation." (citing *Smith v. Westchester County*, 769 F. Supp. 2d 448, 463 (S.D.N.Y. 2011))).  Based on Plaintiff's allegation that Defendant failed to "hold her position or an equivalent one during her approved leave," (SAC ¶ 114), the Court interprets the allegations as raising an interference claim under the FMLA rather than a claim of discrimination, *see Stuart v. T-Mobile USA, Inc.*, No. 14-CV-4252, 2015 WL 4760184, at \*3 (S.D.N.Y. Aug. 12, 2015) ("Substantive rights under the FMLA subject to interference claims include the right to . . . be restored to the same or equivalent position following leave." (quoting *Gauthier v. Yardney Tech. Prods., Inc.*, No. 05-CV-1362, 2007 WL 2688854, at \*4 (D. Conn. Sept. 13, 2007))); *Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 69 (D. Conn. 2014) ("Failure to reinstate an employee to a prior position or its equivalent following FMLA leave is a properly pled FMLA interference claim." (quoting *Gauthier*, 2007 WL 2688854, at \*7)).  In addition, Plaintiff expressly brings a cause of action for retaliation under the FMLA.  (*See* SAC ¶¶ 98–105 (alleging that Plaintiff "engaged in a protected

"The FMLA gives eligible employees an 'entitlement' to twelve workweeks per year of unpaid leave '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)); *Greenberg v. State Univ. Hosp.*, 838 F. App'x 603, 605 (2d Cir. 2020) (same); *see also Arizmendi v. Rich Prods. Corp.*. No. 22-1971, 2023 WL 4246106, at *1 (2d Cir. June 29, 2023) ("The FMLA affords qualified employees who cannot work due to a 'serious health condition' up to twelve weeks of leave in a year." (quoting 29 U.S.C. § 2612(a)(1)(D))).  It "'creates a private right of action to seek both equitable relief and money damages against any employer . . .' should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights.'" *Sista*, 445 F.3d at 174 (quoting *Nev. Dep't Hum. Res. v. Hibbs*, 538 U.S. 721, 724–25 (2003)); *Woods*, 864 F.3d at 166 (same).  "Under the FMLA, an employer may neither interfere with an employee's exercise of this entitlement nor retaliate against an employee for exercising this entitlement." *Greenberg*, 838 F. App'x at 605 (citing *Woods*, 864 F.3d at 166); *see also Kelly v. Hartford Fin. Servs. Grp., Inc.*, 818 F. App'x 83, 84 (2d Cir. 2020) ("FMLA claims come in at least two varieties: interference and retaliation." (quoting *Woods*, 864 F.3d at 166)); *Sista*, 445 F.3d at 175 (rejecting claims of interference and retaliation).  "[A]n employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Woods*, 864 F.3d at 166 (citing *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016)); *see also Kemp v. Regeneron Pharms., Inc.*, --- F.4th ---, 2024 WL 4111789, at *3 (2d Cir. Sept. 9, 2024) (holding that "an employee is not required to demonstrate an actual denial of benefits to establish

---

activity under the FMLA by exercising her right to leave under the FMLA" and that "Defendant retaliated against [her] for exercising her right to leave" by "refusing to engage in a good faith interactive process" and by "terminating [her].").)

a violation of [the FMLA] and that interference or restraint alone, which includes discouragement, is enough to establish such a violation" (citation omitted)); *Herron v. N.Y.C. Transit*, No. 22-989, 2023 WL 4285816, at *2 (2d Cir. June 30, 2023) ("To succeed on a claim of interference with [her] FMLA rights, [a plaintiff] must establish, among other things, 'that [she] was denied benefits to which [she] was entitled under the FMLA." (alterations omitted) (quoting *Graziado*, 817 F.3d at 424)); *Graziadio*, 817 F.3d at 424 ("[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA.").

"[A]n employee has a right to be reinstated to the former position or an equivalent position at the end of his or her leave." *Hockenjos v. Metro. Transp. Auth.*, No. 14-CV-1679, 2016 WL 2903269, at *5 (S.D.N.Y. May 18, 2016) (citing 29 U.S.C. § 2614(a)), *aff'd sub nom. Hockenjos v. MTA Metro-N. R.R.*, 695 F. App'x 15 (2d Cir. 2017); *see also Woods*, 864 F.3d at 167 ("FMLA rights have two parts — the right to take leave and the right to reinstatement . . . .") However, "the right to reinstatement under the FMLA is not absolute." *Barger v. First Data Corp.*, 851 F. App'x 278, 280 (2d Cir. 2021) (citing *Sista*, 445 F.3d at 174). Rather, FMLA regulations provide that "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, . . . the employee has no right to restoration to another position under the FMLA." *Sarno*, 183 F.3d at 161 (citation omitted); *Hockenjos*, 2016 WL 2903269, at *7 (same (quoting 29 C.F.R. § 825.216(c)). Thus, some courts have determined that, if an employee is unable to return to work after their twelve weeks of guaranteed leave are exhausted, the employer may "replace the employee, as long as the employer is not doing so to punish the employee for exercising her FMLA rights." *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d

524, 534 (S.D.N.Y. 2009); *see also Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 363 (S.D.N.Y. 2016) ("[W]hen an employee has received twelve weeks of leave in a given year and is discharged for being unable to return to work, the employee cannot maintain an interference claim." (citations omitted)); *Vangas v. Montefiore Med. Ctr.*, 925 F. Supp. 2d 574, 578 (S.D.N.Y. 2013) ("Generally, then, when an employee has received his or her twelve weeks of leave in a given year and is fired for being unable to return to work, no interference claim may be maintained." (citation omitted)); *cf. Barger*, 851 F. App'x at 280 ("[S]o long as plaintiff's leave did not constitute a factor in defendant's termination decision, plaintiff may properly be terminated.") (alteration in original) (quoting *Hockenjos*, 2016 WL 2903269, at *8)).  In addition, where "an employer can show a lawful reason, *i.e.*, a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to her position, the employer will be justified to interfere with an employee's FMLA leave rights." *Sista*, 445 F.3d at 175 (quoting *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 979 (8th Cir. 2005)).

In order to make out a prima facie case of FMLA retaliation, a plaintiff must establish that "1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for h[er] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004); *see also Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, 588 F. App'x 41, 42–43 (2d Cir. 2014) (citing *Potenza*, 365 F.3d at 167–68); *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (citing same); *Murray v. City of New York*, No. 23-CV-10031, 2024 WL 3553266, at *13 (S.D.N.Y. July 26, 2024) (listing the four elements of a *prima facie* case of FMLA retaliation).  Instead of but-for causation, however, "'a "motivating factor" causation standard applies to' FMLA retaliation

claims. *Stanley v. Phelon*, No. 23-731, 2024 WL 1453872, at *2 (2d Cir. Apr. 4, 2024) (quoting *Woods*, 864 F.3d at 166)).

The standard for showing a causal connection in retaliation claims is the same as discussed above in connection with Plaintiff's ADA retaliation claim, *supra* section II.b.ii.2, and can be shown either indirectly through evidence of temporal proximity or other circumstantial evidence, or directly through evidence of retaliatory actions directed at the plaintiff. *See Tafolla*, 80 F.4th at 125; *see also Mineo v. Town of Hempstead*, No. 22-CV-4092, 2024 WL 1077874, at *9 (E.D.N.Y. Feb. 23, 2024) ("Courts in this Circuit tend to look at the temporal proximity or other connections between the protected activity, here the FMLA leave, and the alleged acts of discrimination or retaliation." (citing *Fukelman v. Delta Air Lines, Inc.*, No. 18-CV-2, 2020 WL 4587496, at *20 (E.D.N.Y. Apr. 13, 2020))), *report and recommendation adopted*, 2024 WL 1072569 (E.D.N.Y. Mar. 12, 2024); *Desiderio v. Hudson Techs., Inc.*, No. 22-CV-541, 2023 WL 185497, at *4 (S.D.N.Y. Jan. 13, 2023) ("When alleged retaliation occurs in close temporal proximity to an employee's exercising of federally protected employment rights, courts have inferred a retaliatory intent in satisfaction of that pleading requirement."); *Albertin v. Nathan Littauer Hosp. & Nursing Home*, 537 F. Supp. 3d 243, 269 (N.D.N.Y. 2021) (explaining that, under the FMLA, "[d]irect evidence often involves 'discriminatory statements or actions by employees who . . . have enormous influence in the decision-making process'" (quoting *Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 514 (E.D.N.Y. 2018))).

### i.   FMLA interference claim

Defendant argues that "Plaintiff fails to state a claim under the FMLA because she has not shown that she was denied benefits to which she was entitled." (Def.'s Mem. 15.) In support, Defendant contends that it fulfilled its obligations to Plaintiff under the FMLA by

granting her twelve weeks of leave and offering her a chance to return to work, and that it could lawfully terminate Plaintiff's employment when she failed to do so.  (*Id*. at 15–16.)

Plaintiff argues that Defendant "fails to consider the broader context of her disability" and that the "pivotal inquiry" is "not . . . whether [Plaintiff] could return by the stipulated date but whether she could perform the essential functions of her position with reasonable accommodations."  (Pl.'s Opp'n 14–15.)

Plaintiff's claim of interference with her FMLA rights fails because she does not establish that she was denied benefits that she was entitled to under the FMLA or that Defendant otherwise impeded Plaintiff's exercise of her FMLA rights.  Plaintiff does not allege that Defendant attempted to discourage or otherwise restrain her from exercising her rights under the FMLA.  *See Kemp*, 2024 WL 4111789, at *3 ("[A]n employer can violate the FMLA merely by interfering with the employee's benefits under the FMLA without actually denying the employee's request for those benefits.").  Rather, Plaintiff alleges that Defendant "urged [Plaintiff] to take a leave of absence," and that "[i]n acknowledgement of her rights under the FMLA," Defendant approved her request for leave.  (SAC ¶¶ 34, 50.)  Plaintiff also does not dispute that she took the twelve weeks of leave to which she was entitled — beginning on February 11, 2022, until the termination of her employment thirteen weeks later on May 13, 2022.  (SAC ¶¶ 50, 63.)  In addition, Plaintiff does not allege that Defendant failed to reinstate her to her prior position once her leave ended.  Although Plaintiff alleges that Defendant "failed to communicate any offer of reinstatement" to her, she specifically alleges in the SAC that Defendant "state[d] that if [Plaintiff] did not return to work as of May 13, 2022, she would be . . . terminated."  (*Id*. ¶¶ 63, 83.)  Thus, Defendant provided Plaintiff with her twelve weeks of FMLA leave and did not interfere with those benefits.

Although Plaintiff argues that she was unable to return to work as requested because Defendant did not offer accommodations that would have enabled her to "perform the essential functions of her position," (Pl.'s Opp'n 15; *see also* SAC ¶ 66 (alleging that Defendant's "failure to communicate . . . to facilitate a reasonable accommodation made it impossible to return to work upon expiration of [Plaintiff's] FMLA leave")), Plaintiff has not alleged that she was entitled to reinstatement.  While Defendant's alleged failure to provide reasonable accommodations could give rise to a claim under the ADA,[13] Plaintiff has not provided any authority to suggest that it also gives rise to a claim under the FMLA.  *Cf. Hockenjos*, 2016 WL 2903269, at *8 (explaining that the plaintiff's argument that "his interference claim [was] . . . cognizable[] because many, if not all, of his job performance issues were caused by his mental health issues" was "essentially [an] argu[ment] that he was terminated as a result of his disability, which amounts to a claim under the ADA" rather than the FMLA); *see also Vangas*, 925 F. Supp. 2d at 579 (dismissing FMLA interference claim where the plaintiff's "own pleadings show she could not return to work");  *Clark v. N.Y. State Elec. & Gas Corp.*, 67 F. Supp. 2d 63, 80–81 (N.D.N.Y. 1999) (finding that "the fact that [p]laintiff was not restored to her position at the end of the [twelve]-week period did not infringe her FMLA rights" because it was "undisputed that at the end of [her leave] period she remained unable to perform the essential functions of her position"); *cf. Santiago v. Dep't of Transp.*, 50 F. Supp. 3d 136, 144 (D. Conn. 2014) (explaining that "reinstatement may be denied '[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition'" (quoting 29 C.F.R. § 825.216(c))).

---

[13]  Plaintiff does not bring a claim for failure to accommodate under the ADA in the SAC.  (*See generally* SAC.)

Accordingly, Plaintiff has failed to state a claim for interference with her rights under the FMLA and the Court grants Defendant's motion to dismiss this claim.

### ii.   FMLA retaliation claim

Defendant argues that Plaintiff's FMLA retaliation claim must be dismissed because she "has failed to sufficiently allege she was terminated because she took FMLA leave." (Def.'s Mem. 21 (emphasis omitted).) In support, Defendant contends that Plaintiff alleges that "she was terminated because [Defendant] requested that she return to work after she exhausted her FMLA leave but she . . . refused to do so." (*Id.*) Defendant also argues that, because Plaintiff concedes that she was unable to return to work following the end of her leave, "she is unable to state a claim for FMLA retaliation." (*Id.*)

Plaintiff argues that, "[a]t this juncture," she "is not required to present evidence but only to allege facts that are sufficient to raise a plausible inference of retaliation." (Pl.'s Opp'n 22.) Plaintiff asserts that she has done so because she alleges "specific retaliatory actions," that she "engaged in a protected activity by taking FMLA leave, following which Defendant committed retaliatory actions by refusing to engage in a good faith interactive process and terminating her employment." (*Id.*) Plaintiff also argues that the fact that she "requested additional leave does not negate her claim for FMLA retaliation but reinforces the premise that her termination was a retaliatory response for exercising FMLA rights." (*Id.* at 22.)

Plaintiff sufficiently alleges a claim of FMLA retaliation. Plaintiff exercised her right to twelve weeks of leave under the FMLA beginning on February 11, 2022. (*See* SAC ¶ 50.) She alleges that Defendant terminated her employment on May 13, 2022, one week after she exhausted her twelve weeks of leave under the FMLA.[14] (*Id.* ¶ 64.) Although an employer "can

---

[14]   Because Plaintiff's FMLA leave began on February 11, 2022, her twelve-week leave period ended on May 6, 2022.

replace" an employee who "has not returned to work at the end of the FMLA leave," they may do so only "as long as the employer is not doing so to punish the employee for exercising her FMLA rights." *Desiderio*, 2023 WL 185497, at *5. Defendant terminated Plaintiff's employment seven days after the end of Plaintiff's FMLA period, and although Defendant claims that it had a legitimate reason for doing so, the temporal proximity between the end of Plaintiff's FMLA leave period and her termination is sufficient to raise an inference of retaliatory intent. *See Patel v. NYU Langone Hosps.*, No. 20-112, 2021 WL 4852426, at *3 (2d Cir. Oct. 19, 2021) (noting that the "temporal connection between a series of protected absences and [the plaintiff's] firing for poor attendance gives rise to a plausible inference that he was fired for taking FMLA leave"); *Khan v. ELRAC, LLC*, No. 23-CV-3, 2024 WL 1344694, at *5 (D. Conn. Mar. 29, 2024) ("[T]he time between leave and adverse employment action here appears to be less than two weeks, much less than what has been held sufficient to plead retaliatory intent in other cases in this Circuit."); *Black v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d 39, 47 (D. Conn. 2023) ("[T]he gap of less than four weeks between [the plaintiff's] alleged FMLA request and her termination is sufficient to survive a motion to dismiss."); *Gonzalez v. New Beginnings for Life, LLC*, No. 19-CV-1736, 2021 WL 2577123, at *4 (D. Conn. June 23, 2021) ("[A] causal inference may be drawn here where the protected activity and adverse action occurred within a six week period.").

Accordingly, Plaintiff has adequately alleged a claim for FMLA retaliation and the Court therefore denies Defendant's motion to dismiss this claim.

### iii.   Damages available for Plaintiff's FMLA claims

Defendant argues that, in the event that Plaintiff's FMLA claims proceed, the Court should dismiss any requests for relief for "mental anguish[,] emotional distress, humiliation, . . . loss of reputation, and punitive damages" under the FMLA because "[s]uch damages are not recoverable under the FMLA." (Def.'s Mem. 23 (citations omitted).)

Plaintiff does not respond to Defendant's arguments.

The FMLA authorizes recovery for "wages, salary, employment benefits, or other compensation," or "any actual monetary losses sustained by the employee as a direct result of the [FMLA] violation, such as the cost of providing care." *See* 29 U.S.C. § 2617(a)(1)(A)(i). As a result, numerous courts within the Second Circuit have concluded that damages for emotional distress and punitive damages are not available under the FMLA. *See, e.g. Bailey v. Cheektowaga-Maryvale Union Free Sch. Dist.*, No. 23-CV-1083, 2024 WL 3228002, at *5 (W.D.N.Y. June 27, 2024) ("[P]unitive damages are not available under the FMLA." (citation omitted)); *Catania v. NYU Langone Health Sys.*, No. 22-CV-4362, 2022 WL 17539121, at *6 (S.D.N.Y. Dec. 5, 2022) ("[T]he FMLA does not provide any cause of action for pain and suffering or emotional distress suffered as a result of an FMLA violation." (alterations and internal quotation marks omitted) (quoting *Smith v. Westchester County*, 769 F. Supp. 2d 448, 469 n.23 (S.D.N.Y. 2011))); *Dennis v. Ultimus Fund Sols.*, No. 20-CV-2813, 2021 WL 3566593, at *5 (E.D.N.Y. Aug. 12, 2021) (dismissing the plaintiff's "claims for emotional distress and punitive damages" under the FMLA because neither was "recoverable in an FMLA action" (citations omitted)); *see also Ivens v. GK N. Childcare Corp.*, No. 23-2586, 2024 WL 382452, at *2 (7th Cir. Feb. 1, 2024) ("FMLA damages don't include emotional distress and punitive damages." (quoting *Arrigo v. Link*, 836 F.3d 787, 798 (7th Cir. 2016))); *Admore v. Hospice of Palm Beach Cnty. Inc.*, No. 22-12280, 2024 WL 371948, at *4 n.5 (11th Cir. Feb. 1, 2024) (finding that the district court did not err "when it excluded evidence regarding emotional distress or other non-pecuniary damages because [the plaintiff] was not entitled to such damages under the FMLA as a matter of law" (first citing 29 U.S.C. § 2617(a)(1)(A); and then citing *Harley v. Health Ctr. of Coconut Creek, Inc.*, 518 F. Supp. 2d 1364, 1370–71 (S.D. Fla. 2007))); *Pontes v. Rowan Univ.*, No. 20-2645, 2021 WL 4145119, at *5 (3d Cir. Sept. 13, 2021) ("The

District Court correctly found that . . . under the FMLA, [the plaintiff] is not entitled to punitive damages or damages for pain and suffering or emotional distress . . . ."); *Tablizo v. City of Las Vegas*, 800 F. App'x 612, (9th Cir. 2020) ("'It is well-settled that the FMLA, by its terms, only provides for compensatory damages and not punitive damages,' as well as limited forms of equitable relief." (alteration omitted) (quoting *Farrell v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 530 F.3d 1023, 1025 (9th Cir. 2008))).

Because Plaintiff has not responded to Defendants' arguments and has not provided any legal support for her arguments, the Court dismisses Plaintiff's claims for emotional distress and punitive damages under the FMLA.

## III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendant's motion to dismiss.  The Court grants Defendant's motion and dismisses Plaintiff's claims of disability discrimination under the ADA, FMLA interference, age discrimination under the ADEA and NYSHRL, and retaliation under the NYSHRL.  In addition, the Court dismisses Plaintiff's claims for emotional distress and punitive damages under her surviving FMLA claim.  The Court denies Defendant's motion as to Plaintiff's claims of disability discrimination under NYSHRL and retaliation under the ADA and the FMLA.

Dated: September 12, 2024
        Brooklyn, New York

                                SO ORDERED:


                                _____s/MKB_____
                                MARGO K. BRODIE
                                United States District Judge

38